UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TISHIE HUDSON,

       Plaintiff,                   CIVIL ACTION NO. 05 CV 72782 DT

     v.                              DISTRICT JUDGE NANCY G. EDMUNDS

JO ANNE B. BARNHART,         MAGISTRATE JUDGE VIRGINIA M. MORGAN
COMMISSIONER OF
SOCIAL SECURITY,

       Defendant.
_____/

**REPORT AND RECOMMENDATION**

**I.  Introduction**

       This Social Security case comes before the court on the Commissioner's motion for summary judgment.  For the reasons stated below, the court recommends that the Commissioner's motion be granted.

**II.  Background**

       On April 26, 2001, plaintiff filed applications for Social Security Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI), alleging that she was disabled due to neck and back pain, leg and shoulder problems, headaches, depression, stress, and facial tingling, with an onset date of December 3, 1999.  (Tr. 48-50, 58, 438-440)  Plaintiff was 39 years of age when she filed the applications.  She has a high school education, plus one year of college, with a work history including employment as a cook, a teacher's assistant, a supervisor and coach at a recreation center, and a janitor.  (Tr. 64, 67)

The Social Security Administration (SSA) denied plaintiff's applications on November 16, 2001. (Tr. 40-45, 441-45) Plaintiff then requested a hearing before an administrative law judge (ALJ). (Tr. 417, 446) The hearing was held on November 3, 2003, before ALJ Manuel J. Carde. (Tr. 450-89) Dr. Richard Hutson, an orthopedic expert, and Dr. James Wargel, a mental health expert, testified at the hearing. Plaintiff, who appeared with her attorney, provided brief testimony as well.

On May 22, 2004, the ALJ issued a decision denying plaintiff's claim. (Tr. 20-31) The ALJ determined that plaintiff suffered from a disorder of the cervical spine (status post surgery), a depressive disorder, and an anxiety disorder, and that her impairments were "severe" within the meaning of 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii), but that she did not have an impairment that met or equaled any of the impairments listed in Appendix 1, Subpart P of the Social Security regulations. The ALJ further determined that while plaintiff could not perform any of her past relevant work, she had the residual functional capacity (RFC) to perform the full range of "light" work.[1] Relying on Rule 202.21 of the Medical-Vocational "grids," 20 C.F.R.

---

[1]"Light" work is defined in 20 C.F.R. §§ 404.1567(b), 416.967(b) as follows:
Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

Ch. III, Subpt. P, App. 2, Rule 202.21, the ALJ found that plaintiff was not "disabled" within the meaning of the Social Security Act. (Tr. 23-24)

On July 12, 2004, plaintiff filed a request for review of the ALJ's decision with the SSA's Appeals Council. (Tr. 10-19) The Council denied the request on May 12, 2005. (Tr. 6-8) The ALJ's decision thus became the final determination of the Commissioner.

On July 15, 2005, plaintiff filed suit for review of the Commissioner's decision pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3). As noted above, the matter comes before the court on the Commissioner's motion for summary judgment. Plaintiff, who is proceeding in this matter *pro se*, did not file a motion for summary judgment. The Commissioner argues that plaintiff has thereby waived any objections to the denial of her claims. In Social Security cases where the plaintiff appears *pro se*, it is this court's practice to review the disability determination on the merits regardless of whether the plaintiff has filed a motion for summary judgment. The court will proceed accordingly.

### III.  Legal Standards

#### A.  Disability Evaluation

A person is "disabled" within the meaning of the Social Security Act "if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). See also 42 U.S.C. § 423(d)(1)(A). Further,

> an individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience,

-3-

> engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).  See also 42 U.S.C. § 423(d)(2)(A).  The claimant bears of the burden of proving that he is disabled.  Foster v. Halter, 279 F.3d 348, 353 (6th Cir. 2001).

A five-step process is used to evaluate both DIB and SSI claims.  20 C.F.R. §§ 404.1520, 416.920.  In Foster, Id. at 354 (citations omitted), the Sixth Circuit discussed the process:

> The claimant must first show that she is not engaged in substantial gainful activity.  Next the claimant must demonstrate that she has a "severe impairment."  A finding of "disabled" will be made at the third step if the claimant can then demonstrate that her impairment meets the durational requirement and "meets or equals a listed impairment."  If the impairment does not meet or equal a listed impairment, the fourth step requires the claimant to prove that she is incapable of performing work that she has done in the past.  Finally, if the claimant's impairment is so severe as to preclude the performance of past work, then other factors, including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed.  The burden shifts to the Commissioner at this fifth step to establish the claimant's ability to do other work.

### B.  Standard of Review

Plaintiff seeks review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g), which provides, in part:

> Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow.

Judicial review under § 405(g) is limited to a determination of whether the ALJ's findings are supported by substantial evidence and whether the ALJ applied the proper legal standards. Brainard v. Secretary of HHS, 889 F.2d 679, 681 (6th Cir. 1989); Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997).  The Sixth Circuit stated in Brainard, 889 F.3d at 681, that "[s]ubstantial evidence is more than a mere scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Further, "the decision of an ALJ is not subject to reversal, even if there is substantial evidence in the record that would have supported an opposite conclusion, so long as substantial evidence supports the conclusion reached by the ALJ." Key, 109 F.3d at 273.

**IV.  Analysis**

The ALJ rendered findings favorable to the claimant at the steps one, two, and four of the five-step disability determination process.  Presumably, plaintiff would have no objections to those findings.  Accordingly, the court will focus its review of the Commissioner's disability determination on the ALJ's step-three finding that plaintiff's impairments were not of listing-level severity and the ALJ's step-five finding that plaintiff retains the capacity to perform light, unskilled work.

    **A.  Step Three Determination**

Turning to the ALJ's step three-determination, disorders of the spine are examined under § 1.04 of the listings, 20 C.F.R. Ch. III, Pt. 404, Subpt. P, App. 1, which states the following:

> 1.04 *Disorders of the spine* (e.g., herniated nucleus pulposis, spinal
> arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc
> disease, facet arthritis, vertebral fracture), resulting in compromise
> of a nerve root (including the cauda equina) or the spinal cord.
> With:

> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);
>
> or
>
> B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;
>
> or
>
> C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

The record reflects that plaintiff underwent back surgery on August 23, 2000. (Tr. 102-43) The surgeon, Dr. Steven Rapp, performed a partial cordectomy at C4/C5, a discectomy at C4, a bilateral foraminotomy, and removed the posterior osteophytes. (Tr. 102) Further, there is evidence in the record that plaintiff has degenerative disc disease and mild spinal stenosis. However, there is no evidence in the record of nerve root or spinal cord compromise, as is required under the terms of the listing. Moreover, Dr. Hutson, the orthopedic expert, testified that plaintiff's back condition did not meet the requirements of § 1.04. (Tr. 470) Accordingly, the record supports the ALJ's conclusion that plaintiff's back impairment did not rise to a level of severity which would meet the Listing.

With respect to plaintiff's mental impairment(s), Dr. Georgia Ann Pitcher, a consulting psychologist, reviewed plaintiff's medical record and determined that her conditions did not

meet the requirements of either § 12.04 (affective disorders) or § 12.06 (anxiety related disorders) of the listings, 20 C.F.R. Ch. III, Pt. 404, Subpt. P., App. 1, §§ 12.04, 12.06. (Tr. 434-35) There is no contrary evidence in the record. Accordingly, the record supports the ALJ's determination that plaintiff's mental impairments are not of listing-level severity.

### B. Step Five Determination

At step five, the ALJ concluded that plaintiff had the RFC to perform the full range of light, unskilled work and that Rule 202.21 of the grids directed a finding of "not disabled" based upon plaintiff's RFC, age, educational background, and other vocational factors.

With respect to the ALJ's findings as to plaintiff's physical limitations, the record supports the ALJ's determination that plaintiff had the RFC to perform light work. The ALJ's conclusion in this regard is consistent with the findings of the Michigan Disability Determination Services (DDS) consulting physician, who indicated in a Physical Residual Functional Capacity Assessment form, among other things, that plaintiff could occasionally lift and/or carry up to 20 pounds, that she could frequently lift and/or carry up to 10 pounds, that she could stand and/or walk (with normal breaks) for a total of approximately six hours out of an eight-hour workday, that she could sit (with normal breaks) for a total of six hours out of an eight-hour workday, and that her ability to push and/or pull (including operation of hand and/or foot controls) was unlimited within the weight restrictions set forth above. (Tr. 403) These findings are consistent with the ability to perform light work. See fn. 1, infra. In further support of the ALJ's conclusion, Dr. Arturo Paz reported on June 12, 2001, that a myelogram and CT scan taken of plaintiff's back revealed "some postoperative" changes but were otherwise unremarkable, with minimal central disc bulging at C5-6, mild diffuse disc bulging and degenerative changes of the

facets at L3-4, and mild diffuse disc bulging at L5-S1.  Dr. Hutson testified that the degenerative changes of plaintiff's cervical and lumbar spine were "part of the aging process, which probably everybody in this room has" and that absent any showing of neurological deficits, such findings were not significant.  (Tr. 466-68)  Dr. Hutson further testified, regarding the post-surgery period, that the record revealed no significant neurological findings.  Id.  Dr. Paz's report and Dr. Hutson's testimony lend support to the ALJ's conclusion that plaintiff remains capable of performing light work notwithstanding her back impairment.

Turning to plaintiff's mental impairment(s), the ALJ determined that those impairments imposed only mild functional limitations upon plaintiff such that they barely qualified as "severe" impairments within the meaning of 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  The ALJ concluded plaintiff had mild restrictions in the activities of daily living, mild difficulties in maintaining social functioning, and mild difficulties of concentration, persistence, or pace, and that she had experienced no episodes of decompensation.  (Tr. 29)  In order to accommodate these mild limitations, the ALJ, in assessing plaintiff's RFC, restricted her to work that was simple and routine in nature.  (Tr. 30)  The ALJ based her findings regarding plaintiff's mental impairments, in part, upon the opinions of Drs. Wargel and Dr. Pitcher, as indicated in the following passages of the ALJ's opinion:

> Dr. Wargel, the psychological medical expert, testified that there is no evidence of record showing an impairment(s) which would prevent the claimant from working.  I agree.
>
> Dr. Pitcher, the psychological medical expert, reported on January 16, 2004, that she had reviewed all of the medical evidence of record.  Dr. Pitcher stated that the medical evidence confirmed diagnoses and treatment of mental impairments of a depressive disorder and an anxiety related disorder, but the impairments were not documented as imposing total inability to perform simple

>       routine tasks for 12 consecutive months.  She indicated that the
>       GAFs of record were not supported by documentation. (Ex 15F at
>       1-2).  I agree.

(Tr. 29)

In addition to the opinions of Dr. Wargel and Dr. Pitcher, Dr. Rom Kriauciunas, a DDS consulting psychologist, indicated in a Mental Residual Functional Capacity Assessment form dated October 21, 2001, that plaintiff was moderately limited in the ability to understand and remember detailed instructions, the ability to carry out detailed instructions, the ability to maintain attention and concentration for extended periods, the ability to interact appropriately with the public, and the ability to respond appropriately to changes in the work setting.  (Tr. 397-99)  With respect to the remaining 15 functional areas listed on the from, Dr. Kriauciunas indicated that plaintiff was not significantly limited.  Id.  Dr. Kriauciunas concluded that "[c]laimant is able to do unskilled work.  Is able to do simple tasks on a sustained basis."  (Tr. 399)

The ALJ's findings regarding the limitations imposed by plaintiff's mental impairments, and his ultimate conclusion that those impairments did not preclude all work activity, are generally consistent with the findings rendered by Dr. Wargel, Dr. Pitcher, and Dr. Kriauciunas. Based upon the expert evidence in the record and review of the record as a whole, the court cannot say that the ALJ erred in concluding that plaintiff's mental impairments did not significantly limit her ability to engage in work activities.

In sum, for the reasons stated above, the court finds that the record supports the ALJ's determination that plaintiff remains capable of performing the full range of light, unskilled work and that she is not disabled within the meaning of the Social Security Act.[2]

**C.  Opinions of Treating Physicians**

Two of plaintiff's treating physicians opined that plaintiff was totally disabled as a result of her impairments.  Because the opinions of treating sources are generally accorded more weight than those of non-treating opinions, the court will briefly address the ALJ's assessment of those opinions.

Dr. Laran Lerner, who appears to have had a rather extensive treatment history with plaintiff, indicated in a series of notes covering the period of August 3, 1999, to July 11, 2001, that plaintiff could not return to work or perform any household chores as a result of her back impairment and psychological impairments.  (Tr. 149-370)  Further, Dr. Madhu Mendiratta, plaintiff's treating psychiatrist, stated in a letter dated September 30, 2004 that "[a]t this point, the patient is totally and permanently disabled for any kind of gainful employment."  (Tr. 447-49)

---

[2] As noted above, the ALJ referred to the grids as a basis for his step-five determination. Ordinarily, where, as here, a claimant has non-exceptional impairments, reliance on the grids is improper.  See, e.g., Cole v. Secretary of Health and Human Services, 820 F.2d 768, 772 (6th Cir. 1987).  However, where the non-exceptional impairments do not significantly affect the claimant's ability to perform work activities and the claimant remains capable of performing the full range of unskilled work at a given exertion level, reliance on the grids is proper.  See Allison v. Apfel, 229 F.3d 1150 (table), 2000 WL 1276950 (6th Cir.(Ohio))("Because Allison's nonexertional impairments only limited him to unskilled light work, the ALJ was correct to conclude that there remained a significant number of jobs in the economy that Allison could perform, since 'approximately 1,600 separate sedentary and light unskilled occupations can be identified in eight broad occupational categories, each occupation representing numerous jobs in the national economy.'  20 C.F.R. pt. 404, subpt. P. app. 2, § 202.00(a).").

"In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." Walters v. Commissioner of Social Sec., 127 F.3d 525, 529-30 (6th Cir. 1997); see also 20 C.F.R. § 404.1527(d)(2).  However, the opinion of a treating physician is entitled to such weight only if it is supported by objective medical evidence and is not inconsistent with other substantial evidence in the record.  Walter, 127 F.3d at 529-30.  Further, opinions on issues reserved to the Commissioner, such as the ultimate determination of whether a claimant is disabled, are not entitled to special consideration.  See 20 C.F.R. § 404.1527(e)(1), (2).

Turning first to Dr. Lerner's statements, with regard to the period prior to the date of plaintiff's back surgery, there is no objective medical evidence in the record, either in Dr. Lerner's treatment notes or elsewhere in the record, that supports Dr. Lerner's conclusion that plaintiff's back impairment precluded all work activity.  Further, there is absolutely nothing in Dr. Lerner's treatment notes indicating that plaintiff's mental impairments were of sufficient severity to render her unable to work.  Nonetheless, the fact that plaintiff had surgery on her back in August of 2000 tends, at least to some degree, to substantiate Dr. Lerner's assessment that plaintiff's back impairment rendered her incapable of working from the date of her injury (December 3, 1999) up to the time of her surgery and for a period of time thereafter.[3]  However, as noted above, diagnostic tests performed in June of 2001 revealed only mild degenerative changes, and there was no evidence in the record of any significant neurological deficits at that time or subsequent thereto.  Thus, the objective medical evidence in the record does not support,

---

[3]Dr. Hutson testified that it could take anywhere from one to six months to recover from the type of surgical procedure plaintiff underwent.  (Tr. 469)

and indeed contradicts, Dr. Lerner's opinion that plaintiff was disabled from all work activity through July of 2001. Further, as with the pre-surgery time frame, there is nothing in Dr. Lerner's treatment notes that supports her conclusion that plaintiff was totally disabled. In addition, as indicated above, the treating physician rule applies to a physician's *medical* opinions. It does not require an ALJ to give special consideration to a treater's opinion that a claimant is totally disabled. See 20 C.F.R. § 404.1527(e). In sum, the evidence in the record amply supports the ALJ's decision to disregard Dr. Lerner's assessment of plaintiff's ability to work.

The record also supports the ALJ's assessment of Dr. Mendiratta's opinion that plaintiff is incapable of working. Again, her statement to that effect is not a medical opinion within the meaning of the treating physician rule. Further, Dr. Mendiratta indicated in the letter, which is dated September 30, 2004 – nearly five years after the alleged onset date – that plaintiff was disabled "at this point." Dr. Mendiratta does not say that plaintiff was disabled throughout the course of the treatment relationship, which essentially began in December of 2002.[4] There is nothing in Dr. Mendiratta's letter or treatment notes indicating that there was any 12 month period in which plaintiff's mental impairments were so severe as to preclude all work activity. Further, the expert medical opinions in the record, as referenced above, contradict Dr. Mendiratta's conclusion that plaintiff was totally disabled. In sum, the court finds that the ALJ did not err in disregarding Dr. Mendiratta's opinion that plaintiff was totally disabled.

---

[4]Plaintiff saw Dr. Mendiratta on one occasion in 2001, but did not see her again until December of 2002.

**V.  Conclusion**

For the reasons stated above, the court finds that the Commissioner's disability determination is supported by substantial evidence.  Accordingly, the court recommends that the Commissioner's motion for summary judgment be **GRANTED** and that plaintiff's complaint be **DISMISSED WITH PREJUDICE**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  Thomas v. Arn, 474 U.S. 140 (1985); Howard v. Secretary of HHS, 932 F.2d 505, 508 (6th Cir. 1991); United States v. Walters, 638 F.2d 947, 949-50 (6th Cir. 1981).  The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  Willis v. Secretary of HHS, 931 F.2d 390, 401 (6th Cir. 1991); Smith v. Detroit Fed'n of Teachers Local 231, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court.  The response shall address each issue contained within the objections specifically and in the same order raised.

|  |  |
|---|---|
|  | s/Virginia M. Morgan |
|  | VIRGINIA M. MORGAN |
| Dated:  April 20, 2006 | UNITED STATES MAGISTRATE JUDGE |

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TISHIE HUDSON,

        Plaintiff,                       CIVIL ACTION NO. 05 CV 72782 DT

  v.                                 DISTRICT JUDGE NANCY G. EDMUNDS

JO ANNE B. BARNHART,              MAGISTRATE JUDGE VIRGINIA M. MORGAN
COMMISSIONER OF
SOCIAL SECURITY,

        Defendant.
_____/

**PROOF OF SERVICE**

The undersigned certifies that the foregoing Report and Recommendation was served upon counsel of

record via the Court's ECF System and by U. S. Mail  on April 20, 2006 to:

Tishie Hudson
35865 Garner Street
Romulus, MI 48074

Social Security Administration
Office of the Regional Chief Counsel
200 W. Adams, 30th Floor
Chicago, IL   60606

                                          s/Jennifer Hernandez
                                          Case Manager to
                                          Magistrate Judge Virginia M. Morgan